IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**AKIL DORSEY**
    Petitioner

v.

**UNITED STATES OF AMERICA**

Civil No. **PJM 11-0988**
Criminal No. **PJM 07-0404**

## MEMORANDUM OPINION

Following a guilty plea, Akil Dorsey was sentenced to 300 months imprisonment for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). His sentence was affirmed by the Fourth Circuit (*U.S. v. Dorsey*, No. 09-4170 (4th Cir. Jan. 14, 2010)), and the Supreme Court denied his petition for a *writ of certiorari*. Dorsey has now filed a Motion to Vacate under 28 U.S.C. § 2255. He has also made a separate Motion for Leave to file an exhibit. The Government opposes the § 2255 Motion, but takes no position as to the Motion regarding exhibits. Dorsey's Motion for Leave to file an exhibit is **GRANTED.** For the reasons discussed below, the Court **DENIES** Dorsey's § 2255 Motion.

    I.    **Background**

At the time Dorsey was indicted in federal court for the crime of possession of a firearm by a convicted felon, he was in the custody of Prince George's County Detention Center on a state charge related to an assault. At the federal detention hearing following the indictment, Dorsey was ordered detained and a detainer was placed on him while in state custody. Dorsey entered a guilty plea to the federal charge on March 10, 2008, pursuant to a written plea agreement.

The written plea agreement stated that the Government would not oppose a three-level reduction in Dorsey's adjusted offense level under the U.S. Sentencing Guidelines, based on Dorsey's acceptance of personal responsibility. However, the plea agreement also stated that if Dorsey should obstruct justice or engage in any criminal conduct between the date of the agreement and the date of sentencing, the Government could oppose any adjustment for acceptance of responsibility.

At the plea hearing, an Amended Statement of Facts was submitted which contained additional information pertaining to the state assault charge Dorsey was facing at the time. The state charge was based on Dorsey's alleged assault upon his girlfriend, when he held a revolver to her head as she attempted to leave him, threatening to kill her if she did not stay. When she got to safety, the girlfriend reported the assault. A few days later Dorsey was encountered by and fled from the police, tossing away what was believed to be the same firearm used against the girlfriend. He was subsequently apprehended by state authorities. Thereafter the State's Attorney for Prince George's County agreed to dismiss the assault charge against Dorsey with several conditions, one being that the Statement of Facts attached to the plea agreement in the federal case should include the factual details of the state assault charge.

On April 17, 2008, Dorsey was transferred from Prince George's County Detention Center to a Commonwealth of Virginia detention center in Alexandria, Virginia. On May 8, 2008, he was unintentionally released from the Alexandria Detention Center, despite the existence of the federal detainer from this Court. Even so, Dorsey had been informed during the guilty plea proceeding in federal court that his sentencing date here was scheduled for May 12, 2008. Dorsey failed to appear in federal court on that day. He explains that he asked a Lieutenant on duty in the Alexandria Detention Center if he had any outstanding charges or court

dates in other jurisdictions, and the Lieutenant told him he had run his information through the National Crime Information Computer (NCIC) and everything had come back "clean," with no warrants or outstanding charges. Dorsey suggests that this led him to believe that the federal felon in possession charge had been dropped. On January 9, 2009, Dorsey was arrested on the federal warrant for his non-appearance at sentencing in May 2008. As it happened, Dorsey, who was arrested while in an acquaintance's apartment, was found in possession of 88 rounds of ammunition.

At his sentencing on the federal charge, this Court found that Dorsey's involvement in the assault against his girlfriend was relevant conduct to be considered in connection with his sentencing for possession of a firearm. The Court concluded that, as a result, Dorsey's offense level should rise, agreeing with the Presentence Report that Dorsey qualified as an Armed Career Criminal who had committed his offense in connection with a crime of violence. The Court determined Dorsey's adjusted offense level to be 34 and his criminal history VI.

## II. Ineffective Assistance of Counsel

Dorsey maintains that his counsel was ineffective at sentencing for two reasons. First, he says counsel failed to seek to withdraw his plea agreement after the Government opposed a three-level reduction in Dorsey's adjusted offense level at sentencing. Second, he claims ineffective assistance when counsel failed to object to the amendment of the Statement of Facts.

### a. *Strickland* Standard

An ineffective assistance of counsel claim requires that the defendant establish (1) that his counsel's performance "fell below an objective standard of reasonableness" and (2) that he experienced prejudice as a result, meaning that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

3

*Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984).[1] In essence, the defendant must show that counsel's performance fell "below the wide range of professionally competent performance." *United States v. Terry*, 366 F.3d 312, 317 (4th. Cir. 2004) (quoting *Griffin v. Md. Corr. Adjustment Ctr.*, 970 F. 2d 1355, 1357 (4th Cir. 1992)).

A slightly modified *Strickland* test applies when a defendant claims ineffective assistance following defendant's entry of a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *United States v. Dyess*, 478 F.3d 224, 237 (4th Cir. 2007). The first part of the *Strickland* test—the performance prong— remains unchanged. *Hill*, 474 U.S. at 58. However, the second part of the test—the prejudice prong—is slightly modified, and requires that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59; *United States v. Fugit*, 703 F.3d 248, 259 (4th Cir. 2012) (evaluating an ineffective assistance of counsel for a guilty plea). The defendant must "convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010).

### b. Defense Counsel's Performance Did Not Fall Below an Objective Standard of Reasonableness

During Dorsey's guilty plea colloquy in this Court, he affirmed his satisfaction with counsel's assistance. The statements of a defendant under oath carry a strong presumption of trust. *United States v. White*, 366 F.3d 291, 295 (4th Cir. 2004). Further, it was not objectively unreasonable for counsel not to oppose amendment of the Statement of Facts—that was part of the express agreement Dorsey had made with the State; indeed, the Amendment actually worked

---

[1] An ineffective assistance of counsel claim "may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003); *United States v. Fugit*, 703 F.3d 248, 259 (4th Cir. 2012) (applying *Massaro*).

to Dorsey's benefit. By amending the Statement of Facts to include the State of Maryland case, Dorsey no longer had to face charges in both the State case and the federal case. Nor was it objectively unreasonable for counsel not to seek to withdraw Dorsey's guilty plea at sentencing. In the first place, Dorsey was not at liberty to withdraw the plea at sentencing just because he might wish to, as any defense counsel would well know. Moreover, the plea agreement clearly specified that Dorsey could not withdraw his plea even if the Government was relieved of its obligations under the agreement—for example, of not opposing a downward adjustment in offense-level for acceptance of responsibility. Here, the Government was relieved of its obligation not to oppose a downward departure inasmuch as Dorsey had been found in possession of multiple rounds of ammunition at the time he was arrested on the federal warrant, if not based on Dorsey's failure to show up at his sentencing in this Court scheduled for May 2008.

### c. The Facts Do Not Indicate that Dorsey Would Likely Have Gone to Trial

By going forward with a plea based on an Amended Statement of Facts, Dorsey got the State of Maryland to agree not to prosecute its case against him. Therefore it defies belief that Dorsey would have chosen to go to trial in state court, as well as a trial here, exposing himself to possible consecutive sentences well beyond what he received in the single federal proceeding. Not surprisingly, Dorsey has pointed to no facts in support of any inference that he would have chosen to go forward with two trials.

### III. Government's Breach of Contract

Dorsey's argument that the Government breached its contract by refusing to move for a reduction at sentencing is procedurally defaulted, since he did not raise it on direct appeal.

Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in a habeas petition only if the defendant can first demonstrate either cause and actual prejudice or actual innocence. *Murray v. Carrier,* 477 U.S. 478, 485 (1986). Cause may be satisfied by ineffective assistance of counsel or the novelty of the claim. But, again, it is clear that counsel in this case cannot be faulted for the Government's decision not to move for the reduction. As noted, the Government was absolved of its obligation under the Plea Agreement when Dorsey committed a crime between the time of the agreement and sentencing, i.e, the possession of the 88 rounds of ammunition. Nor is there anything to suggest that Dorsey's claim is novel. Finally, Dorsey does not contend that he was actually innocent.

### IV. The Court Did Not Violate Defendant's Sixth Amendment Rights by Considering the Amended Facts

As with his other claims, Dorsey has procedurally waived his claim regarding use of the Amended Statement of Facts by failing to raise it on direct review.

In any event, the Court did not err in accepting and considering the Amended Statement of Facts at sentencing. For starters, including the facts of the assault charge in the federal Pre-Sentence Report was an express condition of his deal with the State not to prosecute. Moreover, Dorsey himself confirmed the propriety of the Amended Statement of Facts during the Rule 11 colloquy when he agreed that the facts stated by the Assistant U.S. Attorney were accurate, and when he expressed his satisfaction with his counsel. In any event, a sentencing court may always consider relevant conduct in addition to the actual offense the defendant has pled to. *See United States v. Bostic,* 168 F.3d 718, 724 (4th Cir. 1999). Dorsey's assault involving a firearm—two days before he was arrested for being a felon in a possession of a firearm—was and is conduct relevant to his sentence. His Sixth Amendment rights were not violated when the Court considered the Amended Statement of Facts.

For the foregoing reasons, Dorsey's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 is **DENIED**. The Court concludes that there is no basis to grant a certificate of appealability.

A separate Order will be **ENTERED**.

July 3, 2013

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE